UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Teri Foster,                                              Case No. 3:17-cv-1007

        Plaintiff,

    v.                                                    MEMORANDUM OPINION
                                                                                             AND ORDER


FCA US, LLC,

        Defendant.


## I.   INTRODUCTION

Defendant FCA US LLC moved for summary judgment on all claims filed by Plaintiff Teri Foster. (Doc. No. 32).  In response, Foster has filed in opposition to the motion.  (Doc. No. 34). Defendant filed a reply.  (Doc. No. 37).   For the reasons stated below, Defendant's motion is granted in part and denied in part.

## II.   BACKGROUND

Foster began work for Chrysler in July 2013, as a stock worker. (Doc. No. 28-1 at 7).  She was a member of the United Auto Workers Local 12 – Jeep Unit (the "UAW").  Chrysler merged with Fiat in October 2014 and eventually became known as FCA US, LLC ("FCA").

FCA and the UAW negotiated a collective bargaining agreement (the "CBA") as well as memoranda of understanding on a variety of topics.  These included a memorandum of understanding on absenteeism, which contained a policy for unexcused absences.  (Doc. No. 28-2). An unexcused absence was any absence which was not "contractually permitted."  (Doc. No. 28-2.

at 2). Under the CBA, employees were considered excused from work if they were off work for holidays, vacation, jury duty, bereavement, military leave, in-plant injuries, Family and Medical Leave Act ("FMLA") leave, "Paid S & A Leaves," a leave of absence, "approved PAA time," layoffs, union leave, disciplinary suspensions, "Company Mandated Time off," worker's compensation leave, or if they were sent home during a shift due to the exercise of a manager's discretion. (Doc. No. 28-2 at 2). If an employee were to miss a shift for any reason, then the employee was to call a third party, SYKES, and report their absence.

After an employee's fourth unexcused absence in a twelve-month period, the employee is given a written warning. (Doc. No. 28-2 at 1-2). A fifth unexcused absence results in a corrective action conference, and the sixth unexcused absence results in a one-day paid suspension, after which the employee is required to re-affirm the employee's intention to continue working at FCA. (Id. at 2). Upon the seventh unexcused absence, the employee is terminated. (Id.)

During her first year of employment, Foster collected six unexcused absences. (Doc. No. 28-7). These absences, at least in part, arose from Foster's need to care for her son, who frequently needed to miss school due to the occurrence of symptoms related to several diagnosed medical conditions.

After one year of employment and 1,250 hours worked, Foster became eligible to use FMLA leave on July 30, 2014, to care for her son's serious medical condition. (Doc. No. 28-1 at 26). FCA employed a third-party, Sedgwick, to handle FMLA policy and leave. (Doc. No. 30-4). Under FCA's FMLA leave policy, Foster could take up to 12 weeks of unpaid leave during each calendar year. (Doc. No. 28-12 at 2).

Due to the nature of her son's conditions, Foster sought to use periodic FMLA leave, and her FMLA leave was approved following the submission of her initial certification. (Doc. No. 30-4). Upon certification on September 17, 2014, FCA allowed Foster to take three days of FMLA leave

2

every calendar month and one day of FMLA leave for doctor's visits every three calendar months. (Doc No. 30-5). This certification was based upon the estimate provided by Foster's son's doctor. (Doc. No. 34-9 at 2-3). At FCA's request, Foster recertified many times. (Doc. No. 30-5 through Doc. No. 30-17). On October 28, 2014, Foster's recertification documented her anticipated need to take ten days of FMLA leave per four weeks and one for a doctor's visit every three months. (Doc. No 30-7).

FCA requested that Foster recertify her FMLA leave for the new calendar year on January 14, 2015. (Doc. No. 30-8). She was again approved for the same frequency of FMLA leave. (Doc. No. 30-10). Beginning in February 2015, her son's doctor anticipated Foster would need to use ten days of FMLA leave for every calendar month and one day of FMLA leave for doctors' visits every three months. (Doc. No. 30-10).

On March 31, 2015, Foster called to report she would be absent from work. (Doc. No. 34-17). Before Foster called to report her absence, Foster was advised by a Sedgwick agent that she still had one office visit available and this day could be considered that day of leave. (Doc. No. 34-17 at 4). After this conversation, Foster called and reported she would be absent from work. Foster ultimately did not visit the doctor but was told she could alter the amount of her son's medication when she contacted the doctor's office to schedule an appointment. (Doc. No. 34-17 at 3-4).

FCA investigated the absence, after being informed by Sedgwick that Foster had submitted a recertification form. (Doc. No. 28-16 at 10). Keith Carr, a human resources generalist at FCA, was responsible for the investigation. Carr met with Foster and a union representative on May 20, 2015. During the meeting, Foster claimed to have taken her son to the doctor on March 31, 2015. (Id. at 22). The meeting was put on hold so Foster could get a note from the doctor to verify her visit. (Id.).

Foster produced a note that said to excuse her from work because she was caring for her son and had been in touch with the doctor's office on March 31, 2015. (Doc. No. 30-19). Carr determined this absence was not for a doctor visit, so Foster had exceeded her anticipated FMLA leave for March, making March 31 her seventh unexcused absence. (Doc. No. 28-16 at 23). FCA then terminated Foster. (Id.).

At the same time, FCA issued Foster a "Step 1" written warning for violating her contract, specifically the Standards of Conduct, for providing false or misleading information when she failed to correct her initial statements about having taken her son to the doctor on March 31. (Doc. No. 28-25). This was Foster's first instance of workplace discipline at FCA. (Doc. No. 28-25 at 2). The UAW filed a grievance on Foster's behalf, but the grievance was unsuccessful. (Doc. No. 34-26 at 2-3).

### III.  STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV.    DISCUSSION

A claim under the FMLA may take two forms: (1) interference or (2) retaliation. *See* 29 U.S.C. §§ 2614(a) & 2615(a); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003). Foster asserts both, claiming FCA interfered with her right to take FMLA leave and also retaliated against her for taking FMLA leave. The only significant difference between the claims is a plaintiff must prove the employer intended to retaliate against the plaintiff for exercising her FMLA rights, but does not need to prove the employer intended to interfere with the plaintiff's FMLA rights. *Edgar v. JAC Prods.*, 443 F.3d 501, 507-508 (6th Cir. 2006).

In the absence of direct evidence, the Sixth Circuit applies the *McDonnell Douglas* burden-shifting framework to FMLA claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 381-83 (6th Cir. 2017) (FMLA retaliation); *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427-32 (6th Cir. 2014) (FMLA interference). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case. If the plaintiff can establish a *prima facie* case, the defendant employer must articulate some "legitimate, nondiscriminatory reason" for the action taken. *McDonnell Douglas*, 411 U.S. at 802. Only after these two steps are satisfied does the burden shift back to the plaintiff who must establish that the employer's stated reason is a mere pretext for discriminatory conduct. *Id.* at 804-05.

A. **INTERFERENCE**

The FMLA prohibits employers from interfering with, restraining, denying, or attempting to deny, an employee's "exercise [of] any right provided" by the FMLA. 29 U.S.C. 2615(a)(1). When analyzing a claim under the "interference" or "entitlement" theory, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Arban*, 345 F.3d at 401 (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). Under the interference theory, an employer

6

does not violate the FMLA "if the employer has a legitimate reason unrelated to the [employee's] exercise of FMLA rights for engaging in the challenged conduct." *Edgar*, 443 F.3d at 508.

To establish an interference claim, each plaintiff must show:

> (1) he is an eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

FCA does not contest Foster was an eligible employee, FCA is an employer as defined under the FMLA, or that Foster gave notice of intent to take leave. While FCA does contest elements three and five, Foster contends FCA denied her the right to take leave under the FMLA to which she was entitled.

Foster's interference claim arises from FCA's decision to terminate her after concluding her absence on March 31, 2015, was not covered by the FMLA. At that time, FCA had approved Foster's request for intermittent FMLA leave with the anticipation she may need to be absent to care for her son up to ten times in a four-week period, and absent one time every three months for treatment. (Doc. No. 30-10 at 3). The parties do not dispute that Foster had been absent from work on ten days in the four weeks preceding March 31.

There also appears to be no dispute that Foster would be entitled to use FMLA leave on March 31 if she in fact had needed to take her son to the doctor on that date or if she needed to care for her son on that date due to his serious medical condition. The dispute over the reality of those needs, however, means FCA is not entitled to summary judgment on Foster's interference claim.

FCA asserts Carr initiated his investigation of Foster's use of FMLA leave on May 14, 2015, after receiving notice of an updated certification form from Sedgwick, which lead him to conclude Foster had exceeded the pre-authorized extent of her FMLA leave. (Doc. No. 32-1 at 13-14). FCA

7

contends Carr's investigation proved Foster was not entitled to use FMLA leave on March 31 because "the recertification obtained from the healthcare provided did not support extending the number of certified occurrences for flare-ups to 11 occurrences." (Doc. No. 32-1 at 16).

The problem with this reasoning is FCA's recertification request did not notify Foster or her son's doctor that FCA expected the recertification to anticipate a greater number of absences during each four-week period. Rather, the recertification request stated Foster "had absences associated with a pattern of Monday, Thursday[,] and Saturday absences" and informed Foster "[a]ccordingly, [she] must have the enclosed Medical Certification Form completed and returned to Sedgwick no later than May 8th, 2015." (Doc. No. 30-11 at 1). Foster complied with this specific request, eventually returning a certification form which anticipated absences on any day from Monday through Saturday. (Doc. No. 30-15 at 1).

When an employer requires an employee to obtain a medical certification of the employee's leave, the employer assumes the responsibility to notify the employee that it considers the certification to be "incomplete or insufficient," and to "state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). An employer's "failure to notify an employee of the specific deficiency in an FMLA medical certification form constitutes interference if it results in the denial of the employee's request for protected leave." *Curlee v. Lewis Bros. Bakeries Inc. of Tennessee*, No. 3:17-CV-01347, 2019 WL 1470602, at *5 (M.D. Tenn. Apr. 3, 2019) (quoting *Alcala v. Best Buy Stores, LP*, No. EDCV 11-00798-JVS, 2012 WL 6138332, at *13 (C.D. Cal. Nov. 7, 2012). A certification may "fairly be characterized as 'insufficient'" if the form is "non-responsive as to whether [the employee] was incapacitated during the period for which [ ]he sought leave." *Curlee*, 2019 WL 1470602, at *5 (quoting *Swegan v. Shepherd of the Valley Lutheran Ret. Servs., Inc.*, No. 4:11CV02179, 2013 WL 1284309, at *7 (N.D. Ohio Mar. 25, 2013) (alterations in original)).

8

While the FMLA would have permitted FCA to request recertification of the anticipated frequency and duration of Foster's FMLA leave (including March 31, 2015, specifically), FCA did not make that request. The recertification request addressed only the purported pattern of Foster's absences and did not include any request to account for additional days off during each four-week period. As a result, FCA may have interfered with Foster's entitlement to use FMLA leave. *Swegan*, 2013 WL 1284309, at *7 (An employer cannot "deny leave on the basis of an insufficient certification without adhering to the procedure set forth in 29 C.F.R. § 825.305(c).").

Nor is FCA entitled to summary judgment on Foster's interference claim based upon Carr's conclusion that Foster did not take her son to see the doctor on March 31. The Sixth Circuit has held open the possibility "that an employee may be able to maintain an interference claim when that employee had a good-faith intention to miss work for an approved purpose, but was prevented from accomplishing that purpose because of some independent force." *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014).

Foster asserts her son's first dose of medication did not resolve the flare-up of his symptoms and that she called off work with the intention of taking him to the doctor. (Doc. No. 34-27 at 160-64). Foster represents she was unable to make an appointment for her son on March 31, but received instructions from the doctor's office to give her son another dose of medicine, which had the ultimate effect of resolving his symptoms. (Doc. No. 34 at 7, 12). As Foster could not force the doctor's office to schedule an appointment for her son on March 31, FCA has not demonstrated it is entitled to judgment as a matter of law on Foster's interference claim.

FCA also offers several other reasons why Foster did not suffer any harm from any technical interference with her FMLA leave, based upon evidence it obtained after her termination: (1) Foster's son's social media posts and attendance records show he was at school all day on March 31; (2) Foster should have been discharged for two absences in November 2014; and (3) Foster allegedly

9

materially altered her son's school attendance records for March 31, 2015. (Doc. No. 32-1 at 20-21). I will address these arguments in reverse order.

As an initial matter, Foster did not alter her son's attendance records – the school did. As her attorney points out "[i]t strains credulity that the school attendance clerk would voluntarily alter the attendance records if the school was adamant that the attendance records were already accurate. It is also incredible that Ms. Foster would go through the trouble of securing fraudulent attendance records and still produce the original attendance records." (Doc. No. 34 at 17). Foster's request that the school change attendance records from three years prior may have been unusual, but that does not mean it is conclusive evidence she somehow engaged in misconduct.

Next, while FCA may have subsequently regretted exercising leniency with respect to two of Foster's absences from November 2014, it has not identified any new evidence it acquired after Foster's termination which may have materially altered its decision. To the contrary, FCA itself states that "[d]espite the fact neither [doctor's] note substantiated Foster's explanation for her late call-ins, FCA US agreed not to issue the Step 7 termination and gave her yet another chance." (Doc. No. 32-1 at 10).

Finally, neither Foster's son's attendance records nor his social media posts establish he was at school all day on March 31, 2015. As I noted above, the school chose to amend the attendance records to show Foster's son as absent on that date. Further, even if I assume Foster's son's Facebook post was admissible evidence – a point Foster strongly contests, that post (which was made during school hours) only contains a picture of Foster's son with the caption "this morning b4 school." (Doc. No. 34-22). While one might infer he intended to go to school, it does not show him at school, or confirm in any way that he in fact went to school.

In short, Foster presents evidence (a) her absence on March 31 would have been covered by the FMLA as a day she needed to care for her son's serious medical condition if FCA had requested

that information in its recertification request, and (b) her absence would have been covered by her pre-existing certification if she had been able to make a doctor's appointment for her son on that date. Foster has established a genuine dispute of material fact as to whether FCA interfered with her entitlement to leave under the FMLA, and FCA has not identified a reason unrelated to the exercise of her FMLA rights to support her termination. *Edgar*, 443 F.3d at 508. Therefore, FCA is not entitled to summary judgment on this claim.

### B. RETALIATION

Under the "retaliation" or "discrimination" theory, employers may not "discriminat[e] or retaliate[e] against an employee ... for having exercised…FMLA rights" or "use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *see also Arban*, 345 F.3d at 403. To establish a prima facie case of FMLA retaliation, Foster must show:

> (1) [s]he engaged in an activity protected by the Act, (2) this exercise of [her] protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action.

*Tennial*, 840 F.3d at 308 (citing *Arban*, 345 F.3d at 404); *see also Marshall*, 854 F.3d at 381.

Even if I were to assume Foster established each element of her prima facie case, *see Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012), I conclude FCA is entitled to summary judgment on Foster's retaliation claim because she fails to show FCA's stated reason for her termination was merely a pretext for retaliation.

FCA asserts it terminated Foster because its investigation revealed she had exceeded her pre-approved days-off to care for her son and that she did not take her son to the doctor on March 31 as she claimed, and therefore her absence on that date was not covered by the FMLA. Foster argues she in fact was entitled to FMLA leave on March 31, leaving FCA's proffered reason with no basis in fact and, therefore, pretextual.

11

While evidence that an employer's proffered reason has no basis in fact may create an inference of pretext, the plaintiff also must show "the employer's belief was not honestly held." *Seeger*, 681 F.3d at 285 (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006)). The employer's belief is "considered honestly held where the employer can establish it reasonably reli[ed] on particularized facts that were before it at the time the decision was made." *Seeger*, 681 F.3d at 285 (quoting *Joostberns*, 166 F. App'x at 791). It is of particular relevance in this case that the employer's reason is entitled to deference even if it ultimately is found to be incorrect or baseless, so long as "the employer made a reasonably informed and considered decision before taking an adverse employment action." *Seeger*, 681 F.3d at 285-86 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).

Carr's investigation, even when viewed in the light most favorable to Foster, permitted FCA to make a reasonably-informed and considered decision before terminating her. After determining Foster may have exceeded her pre-approved days of FMLA leave, Carr (i) reviewed notes from Foster's phone calls to FCA's call-off phone line in the four weeks prior to and including March 31, 2015, (ii) scheduled a meeting with Foster and her union representative, (iii) adjourned the meeting to permit Foster to obtain confirmation from her son's doctor's office, (iv) contacted the doctor's office after observing the note did not state Foster's son had a doctor's appointment on March 31, and (v) met a second time with Foster and her union representatives concerning her March 31 absence.

Foster does not offer any evidence to undermine the investigation, "such as an error on the part of the employer that is 'too obvious to be unintentional.'" *Seeger*, 681 F.3d at 286 (quoting *Smith*, 155 F.3d at 807). Unlike in her interference claim, Foster cannot prevail on her retaliation claim based merely upon evidence she may have been entitled to use FMLA leave on March 31. She must

12

bring forth evidence that her use of FMLA leave motivated her termination, and she has not done so.

The Sixth Circuit's decision in *Wallace v. FedEx Corp.*, 764 F.3d 571 (6th Cir. 2014), does not help Foster. (*See* Doc. No. 34 at 22). The *Wallace* court's analysis of FedEx's purported "legitimate and independent reason for dismissal" arose in the context of Wallace's interference claim, not a retaliation claim. *Wallace*, 764 F.3d at 590. That case does not stand for the proposition that an employer is not entitled to summary judgment on an employee's retaliation claim simply because its proffered reason implicates the employee's attempt to use FMLA leave.

Foster also claims there is a material issue of fact concerning the motivation for her termination because FCA has advanced "[s]hifting justifications" for her termination. (Doc. No. 34 at 23 (quoting *Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579, 592 (6th Cir. 2002))). While it is true FCA now points to no fewer than five reasons that would support Foster's termination, FCA has not abandoned its initial reason for terminating Foster – its conclusion that her March 31, 2015 absence was not covered by the FMLA and therefore Foster was subject to discipline under FCA's attendance policy. The other four purported reasons are in addition to, and do not replace, this initial reason. FCA's discussion of these purported reasons does not undermine the credibility of its initial justification.

As a result, I conclude FCA has identified a legitimate, non-retaliatory reason for Foster's termination, and it is entitled to summary judgment on her retaliation claim.

## V.    CONCLUSION

For the reasons stated above, I grant FCA's motion for summary judgment, (Doc. No. 32), as to Foster's FMLA retaliation claim, and deny the motion as to Foster's interference claim.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge